David Donahue (*ddonahue@fzlz.com*)
Jason D. Jones (*jjones@fzlz.com*)
Daniel M. Nuzzaci (*dnuzzaci@fzlz.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Phone:  (212) 813-5900

*Counsel for Plaintiff UMG Recordings, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UMG RECORDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPENDEAL INC. D/B/A REPUBLIC, <br><br> Defendant. | Case No. _____ |

## <u>COMPLAINT</u>

Plaintiff UMG Recordings, Inc. ("Plaintiff"), by its undersigned attorneys, for its Complaint against Defendant OpenDeal Inc. d/b/a Republic ("Defendant"), alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      All of the claims asserted herein arise out of and are based on Defendant's willful infringement of Plaintiff's rights in the REPUBLIC and REPUBLIC RECORDS trademarks (together, "Plaintiff's REPUBLIC Marks").

2.      Since its founding in 1995, Plaintiff's REPUBLIC RECORDS label has grown into one of the most successful and renowned record labels in the world.  The consuming public, music industry professionals, and even the label itself have often referred to REPUBLIC RECORDS simply as "REPUBLIC" for over twenty-five years, and Plaintiff will do the same

throughout this Complaint unless otherwise indicated.  Today, REPUBLIC is home to an all-star roster of multi-platinum, award-winning artists such as Taylor Swift, Ariana Grande, Nicki Minaj, Drake, The Weeknd, Post Malone, Jonas Brothers, Stevie Wonder, and John Mellencamp to name just a few.  *Billboard* magazine has named REPUBLIC the overall "Top Label of the Year" for four of the last six years, and the top "Hot 100" label seven times in the past decade. In 2021, REPUBLIC also won label of the year at the inaugural *Clio Music of the Year Awards*. Through widespread use and commercial success, Plaintiff's REPUBLIC Marks have become well known in the music industry as identifying Plaintiff and its goods and services exclusively.

3.      Plaintiff also owns trademark registrations issued by the U.S. Patent and Trademark Office for its REPUBLIC RECORDS trademark for a wide range of music-related goods and services.

4.      Plaintiff brings this action to stop Defendant's wanton effort to usurp Plaintiff's REPUBLIC name and trademarks for itself in connection with new music-related services that Defendant recently launched under the names REPUBLIC and/or REPUBLIC MUSIC (together, "Defendant's REPUBLIC Marks").

5.      According to Defendant, its new REPUBLIC-branded services allow fans to "invest in [their] favorite artists' songs and earn returns from streaming royalties" for those songs.  This "investment" in turn also gives fans access to music, tickets, artist merchandise, and other special events—all things that are typically associated with a record label.  Indeed, Defendant advertises its new REPUBLIC-branded music services as the record label of the future, promising artists that "the fans are your new record label."  If Defendant delivers on this promise, then the artists, labels, managers, agents, and fans who currently know of only

Plaintiff's REPUBLIC label would be presented with two different companies offering identical services under identical names in the same industry.  Confusion is inevitable.

6.      In the short time since Defendant announced the launch of its music-related services offered under Defendant's REPUBLIC Marks, there have already been instances of actual confusion among members of the public and industry professionals who mistakenly believed that there is an association between Plaintiff and Defendant.  If Defendant's use is not stopped, there will no doubt be further instances of actual confusion.

7.      Plaintiff sought a prompt resolution of this matter without litigation by sending a cease and desist letter to Defendant on October 8, 2021, shortly after Defendant issued a press release announcing the launch of REPUBLIC MUSIC.  In response to this cease and desist letter, Defendant initially stated it was open to pursuing an amicable resolution, and Plaintiff and outside counsel for Defendant engaged in settlement discussions throughout October 2021 in this regard.  However, Defendant recently ceased engaging in settlement discussions.  Instead, Defendant launched its new music-related services on November 4, 2021, making it clear that Defendant refuses to respect Plaintiff's longstanding rights.

8.      Accordingly, to protect the goodwill built up in Plaintiff's REPUBLIC Marks over many years and to protect consumers from Defendant's deceptive conduct, Plaintiff brings this action for infringement of a federally-registered trademark in violation of Section 32(1) of the U.S. Trademark Act of 1946, as amended ("Lanham Act"), 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement and unfair competition in violation of New York common law; and dilution in violation of New York state law.  Plaintiff seeks both injunctive and monetary relief.

## THE PARTIES

9.      Plaintiff UMG Recordings, Inc. is a corporation duly organized and existing under the laws of Delaware with its principal place of business at 2220 Colorado Avenue, Santa Monica, California 90404.

10.     Upon information and belief, Defendant OpenDeal Inc.—which does business under the name "Republic"—is a corporation duly organized and existing under the laws of Delaware with its principal place of business at 335 Madison Avenue, 16th Floor, New York, New York 10017.

## JURISDICTION AND VENUE

11.     The Court has original jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

12.     The Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. §§ 301 and 302 because, upon information and belief, Defendant (i) operates its principal place of business in New York City; (ii) transacts business within New York State by offering its infringing music-related services under Defendant's REPUBLIC Marks to New York consumers; (iii) has engaged in tortious conduct within New York State, including through the marketing, promotion, advertising, sale, and/or offering of its infringing music-related services under Defendant's REPUBLIC Marks; and (iv) has engaged in tortious conduct outside New York State causing injury within this judicial district and state, including through the marketing, promotion, advertising, and/or offering of its infringing music-related services under Defendant's

REPUBLIC Marks that are targeted at New York consumers, and it regularly does or solicits business within New York State and has derived substantial revenue from such services.

13.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims asserted herein occurred in this District, because Defendant is based in this District, and because Defendant is subject to this Court's personal jurisdiction with respect to this action.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.     **Plaintiff, the REPUBLIC Label, and Plaintiff's REPUBLIC Marks**

14.     Plaintiff is part of Universal Music Group, which today is the world's largest music company with leading market positions in recorded music, music publishing, and merchandising.

15.     As the world's largest music company, Universal Music Group owns some of the most iconic and influential record labels in the industry.  Even among these storied labels, Plaintiff's REPUBLIC label stands out as perhaps the most innovative, creative, and commercially-successful label of the past decade.

16.     Founded in 1995, REPUBLIC is home to an all-star roster of multi-platinum, award-winning music superstars, including Ariana Grande, Nicki Minaj, Taylor Swift, Drake, Florence + the Machine, Greta Van Fleet, Hailee Steinfeld, Jack Johnson, James Blake, James Bay, Jessie J, John Mellencamp, Jonas Brothers, Julia Michaels, Kid Cudi, Lil Wayne, Lorde, Metro Boomin, NAV, Of Monsters and Men, Pearl Jam, Post Malone, Stevie Wonder, The Weeknd and many more.

17.     Under Plaintiff's REPUBLIC Marks, Plaintiff has helped recording artists around the world by coordinating the production, manufacture, distribution, marketing, and promotion

of their sound recordings and music videos.  These recording artists rely upon the REPUBLIC label to broaden their fan base, market their albums, sell their merchandise, and promote their singles on streaming services, radio, and television.  As a record label, REPUBLIC also actively scouts and works to develop upcoming talent and new artists.

18.     In the last few years alone, REPUBLIC has had numerous prominent and well-received musical releases from artists such as Ariana Grande (2016's *Dangerous Woman*, 2018's *Sweetener*, 2019's *Thank U, Next*, and 2020's *Positions*); Jonas Brothers (2019's *Happiness Begins*); Taylor Swift (2019's *Lover*, and 2020's *Folklore* and *Evermore*); The Weeknd (2015's *Beauty Behind the Madness*, 2016's *Starboy*, and 2020's *After Hours*); Lorde (2013's *Pure Heroine* and 2017's *Melodrama*); James Blake (2019's *Assume Form*); and Pearl Jam (2020's *Gigaton*), just to name a few.

19.     Plaintiff prominently uses Plaintiff's REPUBLIC Marks in connection with Plaintiff's musical goods and services, including on album covers for artists signed to the REPUBLIC label and throughout its *www.republicrecords.com* website, as shown by way of example below:



Ariana Grande's 2020 *Positions* Album



Taylor Swift's 2020 *Evermore* Album

20.     Press coverage and awards for both the REPUBLIC label and its artists have further enhanced the recognition and reputation of Plaintiff's REPUBLIC Marks.  By way of example only, *Billboard* magazine named REPUBLIC the "Top Label of the Year" in 2015, 2016, 2018 and 2019, and the top "Hot 100" label seven times in the past decade.  In 2019 alone, REPUBLIC was home to the top-selling male artist of 2019 (Post Malone), the top-selling female artist of 2019 (Ariana Grande), and the top-selling group of 2019 (Jonas Brothers).  Attached hereto as **Exhibit A** is a copy of the *Billboard* article titled "The Year in Charts 2019: Republic Records Is Top Label of the Year" which announced these honors.  Adding to these superlatives, in 2021, REPUBLIC won label of the year at the inaugural *Clio Music of the Year Awards* (which are awards dedicated to excellence in music marketing and promotion).  Attached hereto as **Exhibit B** is a copy of a *Billboard* article titled "Republic Records Wins 2021 Clio Music Award for The Weeknd's 'After Hours' Album Campaign" which announced this honor.

21.     By way of another example, the REPUBLIC label garnered significant attention in 2018 when Taylor Swift announced that she would be joining REPUBLIC after spending thirteen years at her prior label.  This transition was highly publicized in the media and received

praise for putting artists first.  Attached hereto as **Exhibit C** is a copy of a *Rolling Stone* article titled "Taylor Swift Signs With Republic Records and UMG, Her First New Home in 13 Years," which discusses Ms. Swift joining REPUBLIC.

22.     Plaintiff's REPUBLIC label also invests in numerous third parties, including ventures and labels owned by its artists, managers, and other entrepreneurs and innovators. Many of these labels and companies are award-winning in their own right.

23.     Plaintiff's goods and services offered under Plaintiff's REPUBLIC Marks have achieved considerable commercial success in the United States.  Sales of albums by artists signed to REPUBLIC reach many millions of dollars annually.  Plaintiff has invested a significant amount of time, effort and money in developing and selling its goods and services offered under Plaintiff's REPUBLIC Marks.  As a result of these efforts and the marketplace success of Plaintiff's offerings under Plaintiff's REPUBLIC Marks, the marks have come to identify Plaintiff exclusively and uniquely in the music industry, and represent enormous goodwill.

24.     Universal Music Group is also expanding into the non-fungible token ("NFT") space.  The company is in talks with leading innovators in the NFT space to sell unique artwork, music, and content associated with all of the labels under the Universal Music Group umbrella— including REPUBLIC.

25.     In addition to Plaintiff's extensive common law rights in Plaintiff's REPUBLIC Marks built up through decades of use and promotion in the United States, Plaintiff also owns federal trademark registrations for the REPUBLIC RECORDS mark.  Specifically, the U.S. Patent and Trademark Office has issued to Plaintiff the following trademark registrations:

| Mark | Reg. No. | Reg. Date | Goods and Services |
|------|----------|-----------|--------------------|
| REPUBLIC RECORDS | 5,417,675 | 3/6/2018 | "Musical sound recordings; Downloadable musical sound recordings" in International Class 9 based on first use of the mark in 1995 |
| REPUBLIC RECORDS | 5,417,677 | 3/6/2018 | "Production and publishing of music; providing online entertainment, namely, providing non-downloadable musical sound recordings; audio and sound recording and production; record production; entertainment in the nature of live concerts and performances by musical artists and groups; entertainment services, namely, providing on-line reviews of music and musical artists; entertainment services, namely, providing information in the field of music, and commentary and articles about music, all on-line via a global computer network; conducting entertainment exhibitions in the nature of music festivals" in International Class 41 based on first use of the mark in 1995 |
| republic records | *5,073,418 | 11/1/2016 | "Musical sound recordings; downloadable musical sound recordings" in International Class 9 based on first use of the mark in 2012 |

| Mark | Reg. No. | Reg. Date | Goods and Services |
|---|---|---|---|
| **republic** records | *5,073,419 | 11/1/2016 | "Production and publishing of music; providing online entertainment, namely, providing non-downloadable musical sound recordings; audio and sound recording and production; record production; entertainment in the nature of live concerts and performances by musical artists and groups; entertainment services, namely, providing on-line reviews of music and musical artists; entertainment services, namely, providing information in the field of music, and commentary and articles about music, all on-line via a global computer network; conducting entertainment exhibitions in the nature of music festivals" in International Class 41 based on first use of the mark in 2012 |
| **republic** records | 5,822,138 | 7/30/2019 | "Clothing, namely, jackets, shirts, sweat jackets, sweat shirts, sweaters, tops, t-shirts; headwear, namely, caps, and hats" in International Class 25 based on first use of the mark in 2012 |

26. These registrations are valid, subsisting, and in full force and effect and serve as *prima facie* proof of Plaintiff's exclusive right to use the marks in connection with the goods and services identified therein, as provided by Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a). Moreover, the two registrations marked with an asterisk (*) have become incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore serve as conclusive evidence of the validity of the marks, of Plaintiff's ownership of the marks, and of Plaintiff's exclusive right to use the marks in connection with the goods and services identified in those registrations. *See* 15 U.S.C. § 1115(b).  As a matter of law, all of these registrations serve to place Defendant on constructive notice of Plaintiff's rights in Plaintiff's REPUBLIC Marks.  *See* 15 U.S.C. §

1072.  Printouts from the official database of the U.S. Patent and Trademark Office showing

status and title of Plaintiff's registrations for Plaintiff's REPUBLIC Marks are attached as

**Exhibit D**.

B.      **Defendant's Infringing Activity**

27.      Upon information and belief, Defendant OpenDeal Inc.—which does business

under the name Republic—was formed in April 2016 and since that time has operated as a multi-

asset investment platform that provides investing opportunities for consumers in several different

sectors, including real estate, cryptocurrency, and blockchain technologies.  Plaintiff wants to be

clear at the outset:  Plaintiff does not object to Defendant's past or present use of the trade name

or trademark REPUBLIC in connection with the foregoing investment services, as long as they

do not overlap with the music industry.

28.      Instead, the present dispute began on October 6, 2021, when Defendant

announced the launch of Defendant's "newest vertical" (or new "investment product") which it

calls REPUBLIC and/or REPUBLIC MUSIC.  True and correct copies of these communications

are attached hereto as **Exhibit E** and **Exhibit F**.

29.      According to Defendant, its new REPUBLIC-branded music services allow fans

to "invest in the music they love."  Specifically, the services offered under Defendant's

REPUBLIC Marks are a "way for artists to raise capital from their fans through investing and in

exchange, the fans receive equity in the rights to the royalties" of an artist's forthcoming songs.

*See* **Exhibit E**.

30.      Upon information and belief, the new services offered under Defendant's

REPUBLIC Marks operate in partnership with a blockchain platform called Opulous.  These

services allow fans and other investors to purchase a Security Non-Fungible Token ("S-NFT")—

*i.e.*, a security interest—in a forthcoming song by an artist.  Defendant promises these fans and investors "royalties" each time the song is streamed in the future, as well as access to "exclusive perks" such as "tickets and merch from the artists they back."  Attached hereto as **Exhibit G** is a true and correct copy of Defendant's new REPUBLIC-branded music webpage on its website setting forth the details of its new service offered under Defendant's REPUBLIC Marks.

31.     In other words, Defendant's REPUBLIC Marks are used in connection with the full suite of goods and services that record labels typically offer, ranging anywhere from sound recordings, merchandise, event tickets, promotional services, and royalty payment services to literal investments in artists, their music, and their ventures.  Indeed, in the "manifesto" accompanying the launch of its new REPUBLIC-branded music services, Defendant boasts that the services are designed to "cut out the middleman"—namely, the record label.  According to Defendant, artists can use Defendant's new services to avoid the kinds of "unfair contracts" and "underhand deals" that some artists have signed in the past with record labels.  As an example of an artist who was purportedly able to escape an "unfair contract," Defendant's manifesto actually mentions Taylor Swift—an artist who is now signed to Plaintiff's REPUBLIC label after leaving her prior label in 2018.  Attached hereto as **Exhibit H** is a true and correct copy of Defendant's "manifesto" dated October 7, 2021.

32.     Defendant's website features two musical artists that have, upon information and belief, recorded unreleased, forthcoming songs in which investors can invest through Defendant's REPUBLIC-branded music services, as shown below:





33.     On October 8, 2021—just two days after the press release announcing Defendant's launch of its new REPUBLIC-branded music services—Plaintiff sent a cease-and-desist letter to Defendant objecting to the use of Defendant's REPUBLIC Marks in connection with music-related services and requesting that Defendant operate its new music-related services under a non-REPUBLIC name.  A copy of this cease and desist letter is attached hereto as **Exhibit I**.  In response to this letter, Defendant stated it was open to pursuing an amicable resolution, initially leading Plaintiff to believe that Defendant would respect Plaintiff's longstanding rights and cease use of Defendant's REPUBLIC Marks in connection with its new music-related services.  Plaintiff and outside counsel for Defendant engaged in settlement discussions throughout October 2021 in this regard.

34.     But recently, Defendant ended settlement discussions and, instead, on November 4, 2021, launched its music services under Defendant's REPUBLIC Marks in connection with an upcoming song named *Mona Lisa* by multi-platinum recording artists Lil Pump featuring Soulja

Boy, making it abundantly clear that Defendant has no intention of complying with Plaintiff's demands.  Defendant hit its maximum fundraising goal of $500,000 within two hours after investing opened on the *Mona Lisa* song.

35.     Customer complaints in the comments section of the *Mona Lisa* investment page reveal that Defendant's launch did not, however, go smoothly and was riddled with complications and poorly-explained instructions.  A true and correct copy of the webpage dedicated to Lil Pump from Defendant's website is attached hereto as **Exhibit J**, which evidences some of these consumer complaints.  Website shutdowns also plagued Defendant's launch.  Defendant's Twitter page includes a re-tweet of @Republic_Help indicating that Defendant's website shutdown on November 3, eight minutes before launch.

36.      Defendant's website also gives fans an opportunity to preview upcoming songs, sets forth biographies for each artist, and displays photographs of past collaborators of each artist—even though these past collaborators have nothing to do with the forthcoming songs by the artist in which consumers can invest.  Two of the past collaborators shown on Lil Pump's page are artists currently signed to Plaintiff's REPUBLIC label, and at least two more artists are or were signed to other Universal Music Group labels.  *See* **Exhibit J**.

37.     Defendant's REPUBLIC Marks are virtually identical and confusingly similar to Plaintiff's REPUBLIC Marks in sight, sound, and commercial meaning.

38.     Defendant's music-related services offered under Defendant's REPUBLIC Marks overlap with, are highly related to, and directly compete with the services offered by Plaintiff under Plaintiff's REPUBLIC Marks.  Moreover, the music-related services offered by Defendant under Defendant's REPUBLIC Marks are targeted towards the exact same consumers—namely,

artists, record labels, managers, agents, and fans—who purchase or use the goods and services offered by Plaintiff under Plaintiff's REPUBLIC Marks.

39.     Defendant promises royalties to the artists and fans who use Defendant's REPUBLIC-branded services, which are derived from streaming, downloads, TV broadcasts, radio broadcasts, public performances, and sync.  All of these are significant revenue sources for artists signed to Plaintiff's REPUBLIC label.  Defendant also lists Spotify, Apple Music, YouTube, Amazon Music, and TikTok as platforms on which its artists' music will be exploited. The companies associated with these platforms are among Plaintiff's most significant commercial partners.  *See* **Exhibit J**.

40.     Defendant has not obtained consent from Plaintiff or any representative of Plaintiff to use Plaintiff's REPUBLIC Marks in connection with any music-related services. Defendant is not associated or affiliated with Plaintiff, and Plaintiff has never authorized or otherwise licensed Defendant to use Defendant's REPUBLIC Marks or any trade names or trademarks confusingly similar to Plaintiff's REPUBLIC Marks, in connection with music-related goods or services.

41.     Upon information and belief, Defendant selected and is using Defendant's REPUBLIC Marks for its music-related services with actual and constructive knowledge of Plaintiff's ownership of and exclusive right to use Plaintiff's REPUBLIC Marks and with the intent to trade off of the significant goodwill symbolized by Plaintiff's REPUBLIC Marks.

42.     Defendant commenced use of Defendant's REPUBLIC Marks in connection with its music-related services long after Plaintiff commenced use of Plaintiff's REPUBLIC Marks in the United States, long after Plaintiff secured federal trademark registrations for the REPUBLIC

RECORDS mark, and long after Plaintiff developed substantial goodwill in Plaintiff's REPUBLIC Marks. As such, Plaintiff has priority.

43.    Upon information and belief, Defendant's conduct is intentional, willful and wanton.

**C.    Harm Caused by Defendant's Infringing Conduct**

44.    In the short time since Defendant began using Defendant's REPUBLIC Marks in connection with music-related services, Plaintiff has become aware of instances of confusion in which members of the public, including sophisticated professionals and trade industry publications, have either (i) mistakenly believed that the music-related services offered by Defendant under Defendant's REPUBLIC Marks originate from or are sponsored by Plaintiff or (ii) acknowledged that such confusion is likely.

45.    For example, *Music Business Worldwide* is a trade industry database that collects and catalogs news stories on various artists, labels, and topics in the music industry. *Music Business Worldwide* has a page dedicated to Plaintiff's REPUBLIC label and has a section called "REPUBLIC RECORDS IN THE NEWS" in which it highlights news stories about Plaintiff's REPUBLIC label. However, in and around mid-October 2021, *Music Business Worldwide* mistakenly included two third-party articles published about *Defendant's* services offered under Defendant's REPUBLIC Marks in partnership with Opulous in the "REPUBLIC RECORDS IN THE NEWS" section of the REPUBLIC RECORDS page. In other words, *Music Business Worldwide* mistakenly thought that the articles about *Defendant's* REPUBLIC-branded music services were about or were related to *Plaintiff's* REPUBLIC label. A true and correct copy of the *Music Business Worldwide* webpage dedicated to Plaintiff's REPUBLIC label with improper tagging circled in red is attached hereto as **Exhibit K**.

46.     By way of another example, in a tweet dated October 19, 2021, Twitter user @CanaryJulz tweeted four images from Defendant's website regarding Defendant's launch of its REPUBLIC-branded music services, and accompanied the tweet with the following statement: "So Producers . . . ***Republic Records*** is about to launch a platform where you can invest into songs dropping by MAJOR artists & share in the royalties/splits & rights of the songs.. just like you can invest into #crypto & #NFTs … Thoughts??" (emphasis added).  This Twitter user also "tagged" *Plaintiff's* REPUBLIC RECORDS Twitter account in her post, all as shown below:



Accordingly, this Twitter user—after seeing *Defendant's* website announcing the launch of its new music services offered under Defendant's REPUBLIC Marks—was actually confused and incorrectly believed that *Plaintiff* was the entity launching Defendant's new music-related services.  A true and correct copy of the foregoing tweet is attached hereto as **<u>Exhibit L</u>**.

47.     By way of another example, on November 11, 2021, an executive with Plaintiff's REPUBLIC label had a meeting with a company called Nifty Labs to discuss opportunities in the blockchain/cryptocurrency space for the REPUBLIC label and its artists.  During that meeting, a Nifty Labs executive complimented the REPUBLIC executive on the label's "Lil Pump initiative."  In other words, this person mistakenly believed that Defendant's REPUBLIC-branded music offering—namely, Defendant's investment opportunity in Lil Pump's music (*see supra* ¶ 34)—came from or was affiliated with Plaintiff's REPUBLIC label.

48.     By way of another example, *CoinDesk*—an online publication that provides news and information on digital currencies such as bitcoin and its underlying technology—published an article on October 6, 2021 about the launch of Defendant's services offered under Defendant's REPUBLIC Marks.  The first sentence of the article reads:

> Republic – *the financial services company, not the record label* – has announced the launch of 'Republic Music,' a loosely defined investment product that claims to offer 'an entirely new way to create, produce and share royalties from music.'

(emphasis added).  A true and correct copy of the aforementioned article is attached hereto as **Exhibit M**.  In other words, a sophisticated industry publication recognized the high likelihood that its readers would *mistakenly* think that services offered under Defendant's REPUBLIC Marks were related to Plaintiff's REPUBLIC label and, thus, *CoinDesk* felt the need to clarify at the outset that Defendant's REPUBLIC-branded service was *not* Plaintiff's REPUBLIC label.

49.     By way of another example, *Music Ally*—an online website that provides a variety of services to assist consumers and businesses with learning about and navigating the music industry—published an article about Opulous's collaboration with Defendant.  The article states:  "Now [Opulous] is exploring [selling music NFTs] through a partnership with Republic. No, ***not the major label imprint (imagine!)***, but a company that runs a startups investment

platform." *(emphasis added)*.  Thus, like the *CoinDesk* example set forth above, this clarifying statement indicates that *Music Ally* believed there to be a high likelihood that its readers would *mistakenly* think that the music-related services offered by Defendant under Defendant's REPUBLIC Marks originated with or were affiliated with Plaintiff's REPUBLIC label.  A true and correct copy of the aforementioned article is attached hereto as **Exhibit N**.

50.     As shown in these examples, as a result of Defendant's use of Defendant's REPUBLIC Marks for music-related services, relevant consumers are likely to be confused, deceived, and misled as to the association of the parties and the origin of the parties' respective goods and services.

51.     The goodwill that Plaintiff has built up in Plaintiff's REPUBLIC Marks is put at risk by Defendant's appropriation and use of identical and/or confusingly similar marks for identical and/or highly related music services.  Defendant's unauthorized acts unfairly and unlawfully wrest from Plaintiff control over Plaintiff's REPUBLIC Marks and its reputation, particularly as Plaintiff has no control over the quality of Defendant's music-related services offered under Defendant's REPUBLIC Marks.  As a result, Plaintiff's extremely valuable reputation is being irreparably damaged.  If Defendant's conduct is not enjoined, it will continue to injure the value of Plaintiff's REPUBLIC Marks and the ability of those marks to indicate music-related services emanating from a single source, namely, Plaintiff.

**FIRST CLAIM FOR RELIEF**
**FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))**

52.     Plaintiff repeats the allegations set forth in Paragraphs 1 through 51 as if fully set forth herein.

53.     Based on Plaintiff's prior rights in Plaintiff's REPUBLIC Marks, the strength and fame of Plaintiff's REPUBLIC Marks, the similarity of Plaintiff's REPUBLIC Marks and

Defendant's REPUBLIC Marks, the identity and/or relatedness of the parties' respective goods and services, the overlap in the parties' targeted consumers, and Defendant's bad-faith adoption of Defendant's REPUBLIC Marks for its new music-related services, consumers are likely to be deceived into falsely believing that the music-related services offered by Defendant under Defendant's REPUBLIC Marks originate from or are otherwise associated with or endorsed by Plaintiff, or that there is some relationship between Plaintiff and Defendant or the goods and services of Plaintiff and Defendant, all to Plaintiff's injury and harm.

54.     Defendant's continued use of Defendant's REPUBLIC Marks for music-related services constitutes infringement of Plaintiff's federally-registered REPUBLIC Marks and is likely to cause confusion, cause mistake, or to deceive the public into the false belief that the music-related services offered by Defendant under Defendant's REPUBLIC Marks come from or are otherwise sponsored by or connected with Plaintiff in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

55.     Defendant's aforementioned conduct is causing irreparable injury to Plaintiff's goodwill and reputation, and Defendant's continued use of Defendant's REPUBLIC Marks for music-related services will both damage Plaintiff as well as deceive and threaten harm to the public unless the conduct is permanently enjoined by this Court.

56.     Plaintiff has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF:**
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a)(1)(A)**

57.     Plaintiff repeats the allegations set forth in Paragraphs 1 through 51 as if fully set forth herein.

58.     Defendant's use of Defendant's REPUBLIC Marks in connection with music-related services that are identical and/or highly related to the goods and services offered by Plaintiff under Plaintiff's REPUBLIC Marks constitutes a false designation of origin and a false representation as to the origin of Defendant's services offered under Defendant's REPUBLIC Marks.

59.     Defendant's use of Defendant's REPUBLIC Marks in connection with such music-related services is likely to cause confusion, cause mistake, or to deceive the public as to the source of Defendant's services and is likely to create the false impression that those services are approved, authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff.

60.     Defendant's conduct is willful, in bad-faith, and intended to trade on the goodwill and cachet of Plaintiff.  Accordingly, Defendant's actions constitute unfair competition and false designation of origin in violation of Sections 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A).

61.     Defendant's aforementioned conduct is causing irreparable injury to Plaintiff's goodwill and reputation, and Defendant's continued conduct will damage Plaintiff as well as deceive and threaten harm to the public unless the conduct is permanently enjoined by this Court.

62.     Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

63.     Plaintiff repeats the allegations set forth in Paragraphs 1 through 51 as if fully set forth herein.

64.     Defendant's use of Defendant's REPUBLIC Marks in connection with music-related services that are identical and/or highly related to the goods and services offered by

Plaintiff under Plaintiff's REPUBLIC Marks is likely to confuse the public as to the origin, source, or sponsorship of Defendant's services, or to cause mistake or to deceive the public into falsely believing that Defendant's services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff, all in violation of Plaintiff's rights under the common law of the State of New York.

65.     As a result of the foregoing conduct, Defendant has been and will continue to be unjustly enriched at Plaintiff's expense.

66.     Accordingly, Defendant's actions constitute unfair competition under New York common law.

67.     Defendant's aforementioned conduct is causing irreparable injury to Plaintiff's goodwill and reputation, and Defendant's continued conduct will damage Plaintiff as well as deceive and threaten harm to the public unless the conduct is permanently enjoined by this Court.

68.     Plaintiff has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF:**
**DILUTION UNDER NEW YORK LAW (N.Y. GEN. BUS. LAW § 360-*l*)**

69.     Plaintiff repeats the allegations set forth in Paragraphs 1 through 51 as if fully set forth herein.

70.     As a result of extensive use and promotion of Plaintiff's REPUBLIC Marks and the goods and services offered thereunder by Plaintiff, Plaintiff's REPUBLIC Marks have become highly distinctive of Plaintiff's goods and services and are widely recognized amongst the consuming public as a designation of source of Plaintiff's goods and services.

71.     Plaintiff's REPUBLIC Marks were distinctive and widely known long before Defendant commenced its unauthorized use of Defendant's REPUBLIC Marks for the music-related services described herein.

72.     Defendant's commercial use of Defendant's REPUBLIC Marks for music-related services has diluted and is likely to continue diluting the fame of Plaintiff's REPUBLIC Marks by impairing their distinctiveness and thereby lessening the capacity of Plaintiff's REPUBLIC Marks to identify and distinguish Plaintiff and its goods and services exclusively.  Defendant's unlawful use of Defendant's REPUBLIC Marks in connection with its inferior, unproven music-related services has also tarnished, and is likely to continue tarnishing, Plaintiff's REPUBLIC Marks, thereby resulting in injury to the reputation of Plaintiff's business.

73.     Accordingly, Defendant's actions constitute dilution in violation of Section 360-*l* of the General Business Law of the State of New York.

74.     Defendant's aforementioned conduct is causing irreparable injury to Plaintiff's goodwill and reputation, and Defendant's continued conduct will damage Plaintiff as well as deceive and threaten harm to the public unless the conduct is permanently enjoined by this Court.

75.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A.     That Defendant, its employees, agents, licensees, distributors, affiliates, subsidiaries, attorneys, officers, employees, representatives, successors, and assigns, and all persons in active concert or participation with any of them, be preliminarily and permanently enjoined from:

i.     using Defendant's REPUBLIC Marks—or any simulation, reproduction, counterfeit, copy, or colorable imitation of Plaintiff's REPUBLIC Marks—in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production,

circulation, or distribution of any music-related good or service, including the REPUBLIC and/or REPUBLIC MUSIC services discussed herein;

ii.     using any false designation of origin, false description or statement, or performing any act that is likely to lead members of the trade or public to believe that any good or service manufactured, offered, distributed, or sold by Defendant is in any manner associated or connected with Plaintiff or is sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiff;

iii.     engaging in any activity constituting unfair competition with Plaintiff or constituting an infringement or dilution of Plaintiff's REPUBLIC Marks;

iv.     applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry Defendant's REPUBLIC Marks—or any simulation, reproduction, copy, or colorable imitation of Plaintiff's REPUBLIC Marks—in connection with any music-related goods or services;

v.     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (iv) above; and

vi.     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (iv) above.

B.     Directing Defendant to destroy all products, labels, signs, stationery, prints, packages, promotional and marketing materials, advertisements, and other materials currently in its possession or under its control that incorporate, feature, or bear Defendant's REPUBLIC Marks—or any simulation, reproduction, copy, or colorable imitation of Plaintiff's REPUBLIC Marks—in connection with any music-related good or service.

C.      Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any good or service manufactured, imported, advertised, promoted, distributed, displayed, produced, sold, or offered for sale by Defendant is in any manner authorized by or related to Plaintiff in any way.

D.      Directing Defendant to file with the Court and serve upon counsel for Plaintiff within thirty days after entry of judgment a report in writing and under oath setting forth in detail the manner and form in which it has complied with the above.

E.      Requiring Defendant to disseminate corrective advertisements in a form approved by the Court, acknowledge its violations of the law hereunder, and ameliorate the false and deceptive impressions produced by such violations.

F.      Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendant's acts of trademark infringement, dilution, and unfair competition, and that such sums, as applicable, be trebled pursuant to 15 U.S.C. § 1117(a) and (b).

G.      Awarding Plaintiff all gains, profits, property, and advantages derived by Defendant from its unlawful conduct described herein.

H.      Awarding Plaintiff exemplary and punitive damages to deter any further violations of its rights as the Court finds appropriate.

I.      Awarding Plaintiff its costs and expenses incurred in this action, including reasonable attorneys' fees, pursuant to 15 U.S.C. §1117(a).

J.      Awarding Plaintiff interest, including pre-judgment interest, on the foregoing sums.

K.      Awarding Plaintiff further relief as the Court may deem just and proper.

Dated: New York, New York
            November 12, 2021

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.


By: /s/ David Donahue
        David Donahue (*ddonahue@fzlz.com*)
        Jason D. Jones (*jjones@fzlz.com*)
        Daniel M. Nuzzaci (*dnuzzaci@fzlz.com*)
    151 West 42nd Street, 17th Floor
    New York, New York 10036
    Phone: (212) 813-5900

    *Attorneys for Plaintiff UMG Recordings, Inc.*