

**David Donahue**
Partner

151 West 42nd Street, 17th Floor
New York, NY 10036

T 212.813.5990
ddonahue@fzlz.com

December 7, 2021

**BY ECF**

Hon. Analisa Torres
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *UMG Recordings, Inc. v. OpenDeal Inc. d/b/a Republic*,
       **Case No. 1:21-cv-9358 (AT) (OTW)**

Dear Judge Torres:

We represent Plaintiff UMG Recordings, Inc. ("Plaintiff"), owner of the world-renowned REPUBLIC RECORDS label. We write pursuant to Rule III(A) of Your Honor's Individual Practices in Civil Cases to request a pre-motion conference concerning Plaintiff's forthcoming motion for a preliminary injunction to enjoin Defendant OpenDeal Inc. d/b/a Republic ("Defendant") from continuing to infringe Plaintiff's REPUBLIC and REPUBLIC RECORDS trademarks while this action is pending.

**I.   Brief Factual and Procedural Background**

Plaintiff owns the iconic REPUBLIC RECORDS label—often referred to simply as "REPUBLIC"—which is widely regarded as the most commercially-successful record label of the past decade. (ECF No. 1 ("Compl.") ¶¶ 14-15.) Founded in 1995, the REPUBLIC label is today home to an all-star roster of multi-platinum, award-winning artists such as Ariana Grande, Taylor Swift, Drake, Pearl Jam, The Weeknd, Jonas Brothers, Stevie Wonder, and John Mellencamp. (*Id.* ¶ 16.) Plaintiff has continuously and extensively offered music-related goods and services under the trademarks REPUBLIC and REPUBLIC RECORDS (together, "Plaintiff's REPUBLIC Marks") for more than twenty-five years. (*Id.* ¶¶ 18-24.) In addition to Plaintiff's extensive common law rights in Plaintiff's REPUBLIC Marks built up through decades of use and promotion, Plaintiff also owns federal trademark registrations for the REPUBLIC RECORDS mark. (*Id.* ¶¶ 25-26.) In short, Plaintiff's REPUBLIC Marks represent enormous goodwill and are some of Plaintiff's most valuable intellectual property assets.

Defendant is an investment platform for industries that, until recently, had nothing to do with music. (Compl. ¶ 27.) That changed a few weeks ago when Defendant announced its foray into

Hon. Analisa Torres
December 7, 2021
Page 2

the music industry—namely, a new investment service named REPUBLIC MUSIC or REPUBLIC (together, "Defendant's REPUBLIC Marks"). According to Defendant, its new REPUBLIC music services give fans an opportunity to "invest in the music they love" by purchasing a security interest in a forthcoming song by an artist they like. Defendant promises these investors "royalties" each time the song is streamed in the future as well as access to "exclusive perks" such as "tickets and merch[andise] from the artists they back." (*Id.* ¶¶ 28-31.) Defendant also markets its REPUBLIC music services to artists, managers, and record labels, making the claim that "the fans are your new **_record label_**." (*Id.* ¶ 5.)

In other words, Defendant is using the mark REPUBLIC—which is identical to Plaintiff's REPUBLIC mark—in connection with a full suite of music-related goods and services that Plaintiff's *record labels* typically offer, ranging anywhere from sound recordings, merchandise, event tickets and royalty payments, to investments in artists and their ventures. Because Defendant is using an *identical* mark on *identical* and/or competitive services, confusion is inevitable. And that is exactly what has happened. On November 4, 2021, Defendant opened investing on the song *Mona Lisa* by rapper Lil Pump. (Compl. ¶ 34.) Within two hours, Defendant hit its maximum investment goal of $500,000 for this song and, currently, the Lil Pump investing opportunity is listed as "SOLD OUT!" and "closed" on Defendant's website. (*Id.*); *see* https://republic.co/lil-pump (last accessed Dec. 6, 2021). Yet despite that short amount of time, there have been numerous instances of confusion in which members of the public, including sophisticated professionals and trade industry publications, have either (i) mistakenly believed that the music-related services offered by Defendant under Defendant's REPUBLIC Marks originate from or are sponsored by Plaintiff, or (ii) acknowledged that such confusion is likely. (*See id.* ¶¶ 44-50.)

On November 12, 2021, Plaintiff filed this lawsuit. Defendant is represented by John Rosenberg of Rosenberg, Giger and Perala P.C. The parties have tried to amicably resolve this dispute, but those discussions have not been fruitful. Accordingly, to prevent irreparable harm to Plaintiff's REPUBLIC Marks, Plaintiff sees no choice other than to seek the Court' intervention.

## II. Plaintiff Satisfies the Requirements for a Preliminary Injunction

A plaintiff is entitled to a preliminary injunction if it can demonstrate "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Plaintiff satisfies each of these elements.

1. Plaintiff Is Likely to Succeed on the Merits of Its Lanham Act Claims

To succeed on federal trademark infringement and unfair competition claims, a plaintiff must demonstrate that "(1) it has a valid mark that is entitled to protection and (2) the defendant's actions are likely to cause confusion with [that] mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (citation and internal quotation marks omitted); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

{F4378766.3 }

Hon. Analisa Torres
December 7, 2021
Page 3

The first element is easily satisfied here since Plaintiff's REPUBLIC Marks have been extensively and continuously used for more than 25 years and, moreover, Plaintiff owns trademark registrations for the REPUBLIC RECORDS mark. *Tiffany*, 971 F.3d at 84 n.4 ("The Lanham Act treats trademark registration as conclusive evidence of the validity of the registered mark . . . .") (internal citation and quotation marks omitted).

Turning to the second element, Defendant is using a mark that is identical to Plaintiff's extremely well-known trademark REPUBLIC. Moreover, Defendant is using its REPUBLIC mark in connection with music-related goods and services that are identical to and competitive with the goods and services Plaintiff offers under its REPUBLIC mark, including sound recordings, investing in artists and their ventures, and other perks such as event tickets and merchandise. As the leading treatise succinctly explains: "[c]ases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement." 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:20 (5th ed. 2021). Moreover, confusion is not just *likely*—it is *already occurring*. (Compl. ¶¶ 44-50.) As the Second Circuit has held, "[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459 (2d Cir. 2004).

Accordingly, Plaintiff easily satisfies the requirement that it show a likelihood of success on the merits. Alternatively, the evidence indicates the existence of serious questions going to the merits, and the balance of hardships weighs decidedly in Plaintiff's favor as detailed below.

2. Plaintiff Will Be Irreparably Harmed

The recently enacted Trademark Modernization Act of 2020 codified a presumption of irreparable harm upon a showing of a likelihood of success on the merits of a trademark infringement claim. *See* 15 U.S.C. § 1116(a). Because Plaintiff can show a likelihood of success on the merits, irreparable harm is presumed. *RiseandShine Corp. v. Pepsico, Inc.*, 21-CV-6324 (LGS), 2021 WL 5173862, at *10 (S.D.N.Y. Nov. 4, 2021). Even without the statutory presumption, Plaintiff can demonstrate irreparable harm. In the short time since Defendant launched its infringing services there have already been numerous instances of actual confusion. This in and of itself demonstrates irreparable harm. *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[S]trong evidence of actual consumer confusion" supports "findings of both likelihood of success on the merits and of irreparable harm.").

3. The Balance of Hardships Weighs Decidedly in Plaintiff's Favor

"[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Absent the Court granting a preliminary injunction, Plaintiff will suffer irreparable harm due to, *inter alia*, the loss of goodwill and the loss of control over Plaintiff's reputation. Conversely, any harm suffered by Defendant is self-inflicted, since Defendant was warned by Plaintiff weeks in advance of launching its music-related service and proceeded

Hon. Analisa Torres
December 7, 2021
Page 4

anyway. (*See* Compl. ¶¶ 33-34.)  If the Court grants the requested relief, Defendant would merely be enjoined from using Defendant's REPUBLIC Marks in connection with its music-related services but would otherwise be permitted to continue offering its other services under its REPUBLIC mark. In other words, Defendant would only have to change the name under which it offers its new music-related services. *See, e.g.*, *Edom Labs., Inc. v. Special Tea Plus, Inc.*, 09-CV-5185 (SJF)(ETB), 2010 WL 596342, at *3 (E.D.N.Y. Feb. 16, 2010) ("Defendants will not be substantially harmed by the preliminary injunction because they may continue to sell their product under different names."). Thus, the balance of hardships weighs decidedly in favor of Plaintiff.

4. <u>The Public Interest Would Be Served by the Requested Injunctive Relief</u>

"[T]he public has an interest in not being deceived" as to the source of or affiliation between goods and services. *N.Y.C. Triathlon*, 704 F. Supp. 2d at 344. Due to the inevitable likelihood of confusion (and indeed the actual confusion) resulting from Defendant's use of Defendant's REPUBLIC Marks for music-related services, the public interest would be served by issuing a preliminary injunction. *Vox Amplification Ltd. v. Meussdorffer*, 13-CV-4922 (ADS)(GRB), 2014 WL 558866, at *15 (E.D.N.Y. Feb. 11, 2014), *report and recommendation adopted*, 50 F. Supp. 3d 355 (E.D.N.Y. 2014) ("Due to the likelihood of confusion, and instances of actual confusion, in this case, the public interest would be served by issuing a preliminary injunction.")

\*     \*     \*

Defendant has not launched any other music-related investing opportunities since November 4 and, based on conversations between the parties' counsel, Plaintiff does not expect Defendant to launch any new music-related investment opportunities before the end of the year. For this reason, Plaintiff is not moving by order to show cause. However, Plaintiff reserves the right to seek immediate relief by order to show cause if Plaintiff learns of an impending launch of new music-related investment opportunities by Defendant.

For the foregoing reasons, Plaintiff respectfully requests the Court order a conference regarding its anticipated motion for a preliminary injunction.

Respectfully submitted,

David Donahue

cc:     John J. Rosenberg—Counsel for Defendant (by email: jrosenberg@rglawpc.com)

{F4378766.3 }